UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
NATIONAL COMMITTEE TO PRESERVE
SOCIAL SECURITY AND MEDICARE and
MEDICARE RIGHTS CENTER, and JAMES
MOKELER, on behalf of Medicare,

                 Plaintiffs,

               - against -

PHILIP MORRIS USA INC., R.J. REYNOLDS
TOBACCO CO., individually and as successor by
merger to Brown & Williamson USA, Inc., and The
American Tobacco Co., LORILLARD TOBACCO
CO., and LIGGETT GROUP, LLC,

               Defendants.
----------------------------------------X

**MEMORANDUM & ORDER**

08 CV 2021 (RJD)

DEARIE, Chief Judge.

      Plaintiffs, two taxpayer advocacy groups and a Medicare recipient diagnosed with lung cancer, bring this action under the Medicare Secondary Payer Act, 42 U.S.C.§ 1395y(b) ("MSP"), against several major producers of tobacco products. Suing on behalf of Medicare, plaintiffs seek to recover expenditures made from the Medicare Trust Fund to cover the costs of treating the tobacco-related illnesses of Medicare beneficiaries. They claim that defendants committed a battery against the users of their products by exposing them to the addictive properties of nicotine without their consent. As a result, plaintiffs contend, defendants bear primary "responsibility" within the meaning of the MSP for the costs advanced by Medicare and, under the MSP, are now liable for twice that amount in damages.

      Before the Court are defendants' motion to dismiss under Federal Rule of Civil Procedure12(b)(6) and plaintiffs' cross-motion for partial summary judgment under Federal Rule

56. For the reasons set forth below, defendants' motion to dismiss is granted, plaintiffs' cross-motion is denied, and the action is dismissed.

**DISCUSSION**

A. <u>The Statute</u>

The nature and history of the MSP have been exhaustively treated in the key authorities the parties address here (in what is apparently the fifth MSP suit brought by plaintiffs' counsel against the same defendants). Familiarity is assumed. <u>See</u>, <u>e.g.</u>, Mason v. American Tobacco, 346 F.3d 36, 38-48 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1057 (2004); Glover v. Liggett Group, Inc., 459 F.3d 1304, 1305-08, <u>reh'g and reh'g en banc denied</u>, 218 Fed. Appx. 980 (11th Cir. 2006); United Seniors Ass'n v. Philip Morris USA, 2006 WL 2471977, *1-3 (D. Mass.), <u>aff'd on other grounds</u>, 500 F.3d 19, 21-23 (1st Cir. 2007), <u>cert. denied</u>, __ U.S.__, 128 S. Ct. 1125 (2008); Woods v. Empire Health Choice, 2007 WL 2406876, *1-*2 (E.D.N.Y.) (examining statute's history and purpose, concludes that the MSP is not a *qui tam* statute).[1] The Court also found one law review discussion of the statute particularly illuminating. <u>See</u> Rick Swedloff, "Can't Settle, Can't Sue: How Congress Stole Tort Remedies from Medicare Beneficiaries," 41 *Akron L. Rev.* 557 (2008).

The motions turn on a fairly narrow issue of statutory construction involving the term "*demonstrated*" and the phrase "*or by other means*" as used in the section of the MSP establishing the basic obligation to reimburse, and as understood in light of the provision creating

---

[1] <u>Woods</u> is on appeal in the Second Circuit. <u>See</u> Docket 07-4208-cv. The case was argued on January 13, 2009. <u>Id.</u>

the private cause of action for double damages that plaintiffs have filed. We set forth the relevant terms in context and then assess their meaning and interplay in light of the parties' competing assertions and the controlling MSP caselaw.

*1. The Basic Obligation to Reimburse and Its Trigger:*

Although Medicare has authority to make advance payments for the medical costs of its beneficiaries whether or not other coverage exists, see 42 U.S.C.§1395y(b)(2)(B) (i) ("Authority to Make Conditional Payment"), the MSP establishes the basic obligation of primary carriers, if they exist, to reimburse Medicare for these conditionally advanced expenditures. The obligation to reimburse is triggered upon "demonstration" that the carrier is responsible for those payments, as follows:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary . . . *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service.

42 U.S.C. §1395y(b)(2)(B)(ii)(emphasis added).[2]

*2. The Authorized "Means" of "Demonstrating" a Plan's Obligation:*

The MSP next provides that:

> [a] primary plan's responsibility for such payment *may be demonstrated by*

---

[2] Defendants do not dispute that they qualify as "primary plans" under a 2003 amendment to the statute, which expanded the definition of "plan" to include an "entity that engages in a business, trade or profession" that "carries its own risk (whether by a failure to obtain insurance or otherwise"). 42 U.S.C. § 1395y(b)(2)(A), added by the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173, §301(b)(1).

a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is an admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, *or by other means*.

Id. (emphases added).

*3. Enforcement:*

Paragraph (3)(A) of this section of the statute, captioned "Enforcement - Private Cause of Action," provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan *which fails to provide for primary payment (or appropriate reimbursement)* in accordance with paragraphs (1) and (2)(A).

42 U.S.C. §1395y(b)(3)(A) (emphases added).

## B. **The Parties' Statutory Arguments**

The central issue is the timing of the demonstration requirement, a matter on which the statute itself is silent: specifically, must a plan's financial "responsibility" to Medicare be fully established before the MSP suit may be commenced (or, in 12(b)(6) terms, before a valid MSP claim can be stated), or may a plaintiff instead seek to establish that responsibility by litigating it within the MSP suit?

Defendants subscribe to the first view. They seek dismissal of the MSP claim because, in their view, the complaint alleges and seeks to litigate their financial responsibility to Medicare but does not, as the statute requires, "demonstrate" it. The complaint, they argue, therefore fails to state a valid claim for MSP liability because that *particular* brand of liability arises only when

the financial "responsibility" to Medicare, once "demonstrated," is ignored.

Defendants recognize that the statute does not expressly state *when* the financial "responsibility" must be "demonstrated," but they emphasize that the statute does describe *how*. They argue that implicit in the type of "means" the statute specifies is the *pre*-establishment requirement on which their motion turns. As they correctly observe, each of the listed "means" (such as judgment, waiver, and release) is an existing document or instrument memorializing an established financial obligation. The phrase "or other means," defendants sensibly argue, must necessarily denote only means that are "comparable" to those listed in the statute; *viz.*, those that are un-contested, or no longer contested, and reduced to a document or instrument reflecting a specific, *established* financial obligation.

Expanding the analysis to the broader context, defendants also rely on the language of the provision establishing the private cause of action, which authorizes suit only when a plan "fails to provide for primary payment (or appropriate reimbursement)." 42 U.S.C. §1395y(b)(3)(A). Until their responsibility to pay Medicare has been demonstrated, defendants argue, they cannot be said to have "failed" to make that payment within the meaning of this section—nor, therefore, be subject to the suit for double damages that the section authorizes. As this Court understands them, defendants are advancing the simple proposition, consistent with a common-sense reading of the statutory language, that *MSP liability* is not synonymous with financial responsibility to Medicare, but arises only when that financial responsibility has been "demonstrated" but then not honored.

Plaintiffs do not dispute that a defendant's tort liability (and thus, its financial "responsibility" to reimburse Medicare) must be "demonstrated" before a defendant can be found

liable under the MSP, but they seek to litigate that issue during and as part of their MSP suit. Their position suggests the notion that the demonstration requirement be viewed as an "element" of the MSP private cause of action that need only be pleaded to survive 12(b)(6), although plaintiffs never quite commit to framing their arguments in this fashion as a matter of law. Instead, by virtue of opposing defendants' 12(b)(6) challenge, plaintiffs can be understood to argue that, although the demonstration requirement may be a prerequisite to MSP liability, it is not a jurisdictional prerequisite to bringing an MSP suit.

Plaintiffs understandably rely on the statute's failure to state in express language when a defendant's financial responsibility must be "demonstrated," and on the apparent open-ended nature of the phrase "or by other means." Although plaintiffs have pressed the view that "other means" may include full-scale litigation, they appear to rely more heavily on a compromise position. They characterize the form of litigating they seek to employ as being essentially summary in nature because it is based on an existing judgment, and suggest that its use therefore comports with the spirit, if not the letter, of the statute. Specifically, through their motion for partial summary judgment, plaintiffs seek an order declaring defendants bound here by certain of the factual findings made in another action that, when extracted from that decision and re-assembled here, would "demonstrate" defendants' tort liability.

Whether or not "demonstrate" as used in the MSP might allow for some degree of *de minimis* litigation, as this line of reasoning invites the Court to find, the Court finds instead that plaintiffs' creative semantics overlook the magnitude of what their motion seeks to accomplish. The other action on which they rely, United States v. Philip Morris USA, 449 F. Supp. 2d 1 (D.D.C. 2006), was a nine-month bench trial on the government's civil RICO claim against the

tobacco industry, at the conclusion of which the court issued findings of fact and conclusions of law filling 1,653 pages in the Federal Reporter; plaintiffs rely here on several hundred pages' worth that they believe establish the elements of common law battery. These are not the materials of *de minimis* litigation. Indeed, plaintiffs' presentation coordinating Philip Morris factual findings with the elements of battery is complex, the contours of *res judicata* jurisprudence are slippery, and the briefing on both sides of the question is considerable. The Court concludes, therefore, that plaintiffs are not seeking to "demonstrate" defendants' tort liability through means that could be considered comparable in substance or spirit to the specific other means listed in the statute.[3] For purposes of the motions, then, the question remains whether plaintiffs may seek to litigate defendants' tort liability *within* the MSP suit or, instead, whether they are required to arrive at the courthouse door with the appropriate instrument documenting defendants' financial obligation to Medicare.

## C. Controlling Authorities

Little discussion is required, as the weight of authority is entirely with defendants. Indeed, each of the federal courts to have considered the questions raised here has rejected plaintiffs' view of the statute. See Mason v. American Tobacco, 346 F.3d at 43 ("defendants are clearly correct when they assert that 'the trigger for bringing a MSP claim is not the pendency of a disputed tort claim, but the established obligation to pay medical costs pursuant to a pre-

---

[3] The district court's decision in Philip Morris is on appeal before the District of Columbia Circuit Court of Appeals, which issued a stay of enforcement pending the outcome. See United States v. Philip Morris, Dkt. No. 06-5368 (L), 2006 WL 4608645 (D.C. Cir., October 31). The docket report indicates that the case was argued on October 14, 2008.

existing arrangement to provide insurance benefits'"); Glover, 459 F.3d at 1309 ("we conclude that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated *before* an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A)") (emphasis in original); United Seniors, 2006 WL 2471977, at *3 ("[u]nder the plain text of the statute, defendants are not subject to suit under the MSP unless and until they are found responsible for Medicare costs and they fail to reimburse Medicare within 120 days after that responsibility first arises"), aff'd on other grounds, 500 F.3d at 13.

Glover, in particular, interprets the statute in precisely the way defendants have addressed it here. See, e.g., 459 at 1309 ( "[u]ntil Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under [the statute]. . . [t]herefore, it cannot be said that Defendants have 'failed' to provide appropriate reimbursement"). See also United Seniors, 500 F.3d at 20 (affirming on other grounds district court's decision, based on Glover, to dismiss §1395y(b)(3)(A) claim for reimbursement because tobacco companies' financial responsibility to pay had not yet been "determined by a judgement, compromise, waiver, . . . release . . . or some other *comparable* means") (emphasis added).[4]

---

[4] One of the MSP implementing regulations promulgated by the Department of Health and Human Services expands briefly upon the meaning of "other means." The regulation provides, in pertinent part, that

    (b) A primary payer's responsibility for payment may be demonstrated by –

        (1) A judgment;

        (2) A payment conditioned upon the recipient's compromise, waiver, or release . .

Plaintiffs have only minor quarrels with this authority. As for <u>Glover</u>, which contains the most comprehensive and decisive analysis, plaintiffs offer merely an earnest invitation that we elect not to follow the decision because it was penned by the Eleventh rather than the Second Circuit. This invitation we of course decline. Not only is <u>Glover</u> consistent with the Second Circuit's understanding of the statute as reflected in its decision in <u>Mason</u>, issued three years earlier, but <u>Glover</u> also understands the disturbing practical consequences of plaintiffs' view of the statute. As the Eleventh Circuit explained, plaintiffs' interpretation of the MSP would

> drastically expand federal court jurisdiction by creating a federal forum to litigate any state tort claim in which a business entity allegedly injured a Medicare beneficiary, without regard to diversity of citizenship or amount in controversy. Second . . . an alleged tortfeasor that is sued under the MSP (instead of under state law) could not contest liability without risking the penalty of double damages: defendants would have no opportunity to reimburse Medicare *after* responsibility was established but before the penalty attached. Third . . . [it] would allow individuals acting as private attorney generals to litigate the state tort liability of a defendant toward thousands of Medicare beneficiaries—as a predicate to showing MSP liability—without complying with class action requirements.

<u>Glover</u>, 459 F.3d at 1309 (emphasis in original).

---

. or

(3) By other means, *including but not limited to a settlement, award, or contractual obligation.*

42 C.F.R. §411.22 (emphasis added).

The furnished examples are, like those listed in the statute but unlike plaintiffs' desired battery judgment, completed, executable instruments. While not dispositive, and arguably not a formal "interpretation," the regulators' view of the matter is due a fair degree of deference here. <u>Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984) (absent clear congressional intent, district courts should defer to implementing agency's interpretation of a federal statute, as long as that interpretation is reasonable).

As for <u>Mason</u>, plaintiffs argue that the portion of the decision relevant here is not an essential component of the holding because it is, in the Circuit's own words, one of "at least three reasons" identified as grounds for affirming the district court's dismissal of the MSP claim in that case. <u>Mason</u>, 346 F.3d at 39. Plaintiffs also question the validity of <u>Mason</u> as a whole because a portion of the decision was overruled by the 2003 amendment expanding the definition of "plan" to include uninsured tortfeasors. See note 1 *supra*. The record in <u>Mason</u> shows, however, that the 2003 amendment and its effect of overruling one of <u>Mason</u>'s grounds were called to the Second Circuit's attention, and that the Court used the occasion to reaffirm the portion of <u>Mason</u> relevant here. <u>Mason v. Am. Tobacco Co.</u>, slip op., No. 02-7923 (2d Cir. Jan. 16, 2004). The Court's order announced specifically that, "the new amendments clarify only that an entity 'shall be deemed to have a self-insured plan if it carries its own risk' . . . but do not alter the principle, previously recognized, that 'MSP liability attaches only to an entity that is required or responsible to pay under a "primary plan"' [quoting its original decision in <u>Mason</u>,] a principle inapplicable to the alleged tortfeasors in this case." <u>Id.</u>, slip op. at 2 (internal citation omitted).

## D. The Alternative Arguments and the Cross-Motion

In light of the foregoing discussion, the Court need not reach defendants' alternative arguments addressed to the question of standing, the related issue of whether the MSP is a *qui tam* statute, nor the merits of plaintiffs' *res judicata* arguments.

Finally, defendants ask this Court "to go beyond dismissing this case and to enjoin plaintiffs' counsel from filing any more MSP lawsuits against defendants without prior approval from the Court." Def. Mem. at 23. The Court declines to do so. Although <u>Glover</u> and <u>Mason</u>

guide the Court to today's decision with little hesitation, the statutory terms themselves do not absolutely foreclose arguments testing their scope.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the complaint is granted, plaintiffs' cross-motion for partial summary judgment is denied, and the case is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 5, 2009

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
Chief United States District Judge